### CHICAGO, R. I. & G. RY. CO. v. MITCHUM.†

(Court of Civil Appeals of Texas. Texarkana. Nov. 10, 1911. Rehearing Denied Nov. 16, 1911.)

1. MASTER AND SERVANT (§ 236*)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.

A member of a hand car crew injured by a train coming from the rear, while he was helping to hastily remove the car, after dismounting on hearing the train close behind, was guilty of contributory negligence, he having known the train was due and kept no lookout for it, though it could have been seen a mile away, and his foreman being ahead looking for a train from that direction; and this though the crew of the train were negligent in failing to give a warning.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 723–742; Dec. Dig. § 236.*]

2. MASTER AND SERVANT (§ 248*)—INJURY TO SERVANT—DISCOVERED PERIL.

A railroad company cannot be held liable, on the ground of discovered peril, to a member of a hand car crew, who, after dismounting from his car on discovering a train close behind it, was injured by the train while he was helping to hastily remove the car from the track, where nothing the train crew could have done after he commenced to remove the car could have changed the result.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 801–804; Dec. Dig. § 248.*]

Appeal from District Court, Wise County; J. W. Patterson, Judge.

Action by J. H. Mitchum against the Chicago, Rock Island & Gulf Railway Company. Judgment for plaintiff. Defendant appeals. Reversed and rendered.

Appellee was in appellant's employ as a section hand on its line of railway. In the latter part of January, 1907, as he testified, he and his brother John Will Mitchum and one Ables, also section hands, with one Wicher as their foreman, in the discharge of their duties as employés of appellant, were traveling from Park Springs on a hand car moving south on appellant's line of railway. When the hand car reached a point on said line of railway 250 or 300 yards from a curve in a cut ahead of them, Wicher, saying he thought he heard a train coming, directed appellee and the other employés to stop the car and wait there while he walked ahead and ascertained if a train was approaching from the

south. The car was stopped, and Wicher walked on to the curve, or to a point near it, and then, by waving his hand, signaled appellee and the other section men to come on. In obedience to Wicher's signal, they propelled the car to a point about 50 yards further south, when a ringing of the rails warned them that a train was approaching, whereupon they jumped from the hand car, and, looking north, discovered that a passenger train running 40 or 45 miles an hour was coming towards them and was only about 50 yards from them. In assisting the other men in getting the hand car off the track, appellee claimed he fell, and so received the injuries he complained of. He recovered a judgment for the sum of $7,500.

N. H. Lassiter, Robt. Harrison, T. J. McMurray, and R. M. Rowland, for appellant. R. E. Carswell and Bell & Milam, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] The contention made that the testimony conclusively established that appellee was guilty of contributory negligence must, we think, be sustained. According to testimony given by appellee as a witness in his own behalf, he had had several years experience as a section hand, was familiar with the duties pertaining to service in that capacity, and knew and fully appreciated the risk incurred by a person engaged in the discharge of such duties. He knew that under ordinary circumstances trains were entitled as against hand cars to the right of way on the railway, and that it was the duty of section men under such circumstances to look out for approaching trains, and, discovering them, to remove hand cars from the track, and so give to such trains the right of way they were entitled to. He knew that the passenger train which he afterwards discovered to be approaching from the north was then past due at that point, and that it was liable at any moment to reach that point on its way south. The foreman had declared in his presence and hearing that he thought he heard a train approaching, and thereupon had directed him and the other section men to stop the hand car, and had then gotten off same and walked south on the track to a curve in a cut 250 or 300 yards ahead of the hand car. Appellee must have known from this conduct of the foreman that he (the foreman) believed the train he thought he heard was approaching from the south. From the point he had reached at the curve the foreman, by a wave of his hand, had signaled appellee and the other section men to come on south with the hand car. Appellee must have understood this signal to mean that the foreman had ascertained that a train was not approaching from that direction. Such being the circumstances surrounding appellee, as shown by his testimony, it further appears from his testimony that from the time he and the other section men stopped the hand car, in obedience to the foreman's order, until he heard a ringing of the rails which warned him that the train from the north (then only about 50 yards from the hand car) was approaching, he never looked north to ascertain if a train was approaching from that direction. Had he looked, he testified, he could have seen the train as it approached when it was as far as a mile away from the hand car, for, he further testified, the track north from where the hand car was was straight for that distance.

The only excuse he offered, while testifying, for neglecting to discharge his duty to keep a lookout for the train, was that he was expecting the foreman to warn him if the train was approaching the hand car from the north. Under different circumstances, such an excuse would be entitled to consideration with reference to an issue as to contributory negligence on the part of a plaintiff in an action like this one; but under the circumstances surrounding appellee, recited above, we do not think such an excuse should be given any weight with reference to such an issue. There is nothing in the record indicating that appellee had a right to rely upon the foreman to discover and warn him of the approach of the train. On the contrary, circumstances indicating he did not have such a right appear in the record. In going to the point at the curve, where by a wave of his hand he signaled appellee and the other section men to come on south, the foreman walked with his back toward the hand car. Appellee knew he was not keeping a lookout north during that time. From the point where the foreman gave the signal appellee did not know, he testified, whether the foreman, had he looked, could have seen farther north than the hand car or not. Appellee therefore had no right to suppose that the foreman was then in a position to discover so as to warn him against the train. After the foreman gave the signal, he walked on south with his back toward the hand car, appellee testified. It was after this signal was given that appellee, who was then standing on the ground near the hand car, got on same, and, assisted by the other section men, proceeded to operate it slowly south. Certainly he did not have a right during that time to expect the foreman, then, as stated, walking and facing south, to discover and warn him of a train coming from the north.

The only other excuse suggested by testimony in the record as a reason why appellee should not, as a matter of law, be held to be guilty of contributory negligence in bringing about a situation resulting in the injury he complained of, was the failure of the men in charge of the passenger train to warn him of its approach by ringing the bell and blowing the whistle of the locomotive. The testimony was sufficient to support a finding that the trainmen were negligent in that particular; but should it be said that their negligence in

that respect furnished an excuse for the failure on appellee's part to discharge the duty resting upon him to keep a lookout for and discover the train? We think not. His duty was not to look out for and discover a train only when warned to do so by the sounding of the whistle or bell of its locomotive. It was to look out for and discover an approaching train, without reference to whether such a warning, or any other, was given or not. In the absence of circumstances which reasonably could be said to excuse him from keeping such a lookout, proper care for the safety of the train and the persons on it, as well as for his own safety and that of the section men with him, and for the hand car as well, demanded a performance by him of that duty. Confessedly he failed to discharge that duty, and, we think, without excuse for such failure. 1 Labatt, Master & Servant, §§ 351, 358; 20 A. & E. Ency. Law (2d Ed.) 144. Therefore, we think, he should be held as a matter of law to have been guilty of negligence which contributed to cause the situation which resulted in the injury he complained of.

[2] Did the testimony, notwithstanding such negligence on his part, nevertheless make an issue as to liability on the part of appellant to him for the injury he claimed to have suffered? If it made such an issue, it must have been because it would have supported a finding that the trainmen discovered appellee to be in a perilous situation, and, after discovering him, failed to use proper care to avoid injuring him. In considering this feature of the case, it must be borne in mind that appellee had safely escaped from the position of danger he occupied while on the hand car. He therefore could not claim a liability against appellant on the ground that the trainmen had discovered the hand car and his perilous situation while on it and had failed to use proper care to avoid a collision between it and the train. No such collision occurred. Appellee's contention was, not that he had not reached a place of safety so far as danger from such a collision was threatened, but that, after reaching a place of safety from that risk, to save the train and the lives of persons on it, he had returned to the hand car, and in assisting others in removing it from the track was in a perilous situation on account of the approaching train. The duty of the trainmen and liability of appellant should be viewed from the standpoint of the new situation so produced. Did the testimony make an issue as to "discovered peril" with reference to the new situation? We think not. If it should be conceded, for the purposes of the inquiry, that appellee's negligence in failing to keep a lookout for the train did not deprive him of a right to complain of negligence on the part of the trainmen with reference to the new situation, and that he was not chargeable with further negligence in returning to the hand car to assist in removing it from the track to prevent the threatened collision, the question remains: Did the testimony make an issue as to negligence on the part of the trainmen with reference to the new situation? We think it must be answered that it did not. When appellee jumped from the hand car, the train, according to his testimony, was then within about 50 yards of the hand car, and, according to the testimony of his brother, was within about 75 yards of it, and moving towards it at a speed of 40 or 45 miles an hour. He was injured, he claimed, as a result of a slipping of his foot on the track, causing him to fall thereon, while engaged in assisting in removing the hand car. His so slipping, he claimed, was due to the haste he was under the necessity of using in order to get the hand car off the track in time to prevent the threatened collision. Manifestly, had the trainmen sounded the whistle and bell of the locomotive, or had it been possible for the trainmen, with safety to the train, to have appreciably slackened its speed after they discovered he would engage in an attempt to remove the hand car from the track, and they had done so, their doing so would not have caused appellee, after he began the attempt, to moderate the haste he felt himself to be under the necessity of using in order to remove the hand car from the track. Therefore we think it is further manifest that the failure of the trainmen to sound the whistle and bell and slacken the speed of the train cannot be said to have been the proximate cause of appellee's slipping on the track and the consequent injury suffered by him. The necessity for the haste which caused appellee to fall was due in part to his own negligence in failing to discover the train in time to have enabled him and his associates to remove the hand car without such haste, and for that reason he could claim a liability against appellant only on the ground that the trainmen, knowing, with reference to the new situation, that he was in a place of danger, failed to use the care they would have used to avoid injury to him. 1 Labatt, Master & Servant, §§ 351, 358, 360. We think it plain from the testimony that anything the trainmen could have done, had it been done, would not have induced appellee and the other section men, after they began the attempt to remove the hand car, to use less haste and more care than they did use in removing it.

We think the first, second, fourth, fifth, ninth, tenth, and eleventh assignments should be sustained, and the judgment reversed. The cause will not be remanded for another trial, as, in the view we take of the case, no other judgment than one in favor of appellant properly could be rendered. Therefore judgment that appellee take nothing by his suit will be rendered here.